# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

| | | |
|---|---|---|
| In Re: | * | Chapter 7 Case |
| | * | Number <u>09-51272</u> |
| DOUGLAS ASPHALT COMPANY, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| SAVAGE, TURNER, PINSON, AND | * | Adversary Proceeding |
| KARSMAN; and KENNETH E. FUTCH, P.C., | * | Number <u>10-05003</u> |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | CV 512-019 |
| | * | |
| FIDELITY & DEPOSIT COMPANY OF | * | |
| MARYLAND AND ZURICH AMERICAN | * | |
| INSURANCE COMPANY; ARCH | * | |
| INSURANCE COMPANY; DUVAL | * | |
| COUNTY/CITY OF JACKSONVILLE; | * | |
| TOOMBS COUNTY TAX COMMISSIONER; | * | |
| GEORGIA DEPARTMENT OF NATURAL | * | |
| RESOURCES/ENVIRONMENTAL | * | |
| DIVISION; FLORIDA DEPARTMENT OF | * | |
| REVENUE; INTERNAL REVENUE | * | |
| SERVICE; MARY JEAN SPIVEY; | * | |
| KENNETH E. FUTCH, P.C.,[1] | * | |
| | * | |
| Defendants. | * | |

---

[1] Consent orders were entered as to the Toombs County Tax Commissioner, Georgia Department of Revenue, Georgia Department of Natural Resources/Environmental Division, and the Internal Revenue Service, dismissing each as defendants. The Duval County/City of Jacksonville and Florida Department of Revenue had default judgments entered against them.

1

**ORDER**

Presently before the Court is an appeal from the United States Bankruptcy Judge Order granting Defendants Fidelity & Deposit Company of Maryland and Zurich American Insurance Company (F&D Zurich) and Arch Insurance Company's partial Motion for Summary Judgment (collectively the "Surety Defendants") and denying Plaintiffs Savage, Turner, Pinson, & Karsman and Kenneth F. Futch's Motion for Summary Judgment. See Dkt. No. 1. For the reasons stated below, the Order is **AFFIRMED**.

**BACKGROUND**

Neither party has contested the Bankruptcy Judge's description of the undisputed facts. As a result, this Court will adopt the Bankruptcy's description of the undisputed and material facts.

Plaintiffs are two law firms that represented Douglas Asphalt Company ("Debtor") and others in a number of legal matters prior to the institution of involuntary bankruptcy proceedings against Debtor on December 2, 2009. In one of these cases, known as the ATS litigation, Debtor brought suit against ATS, a testing corporation, and Evanston Insurance Company. Judge Anthony Alaimo presided over the case. Prior to the jury returning a verdict, Debtor entered into a settlement agreement with those defendants which required each defendant to pay $1 million, thereby generating a $2 million settlement fund. Dkt.

2

AO 72A
(Rev. 8/82)

No. 2, Ex. 1. After this agreement was entered into, the jury returned a verdict of $150 million against ATS and in favor of Debtor. Dkt. No. 2, Ex. 1. After the jury verdict, Debtor, represented by Plaintiffs, filed an action in state court on or about October 27, 2010 requesting that the settlement agreement be set aside. See Douglas Asphalt Company v. QORE, Inc., 2:06-CV-229-AAA, Dkt. No. 347, Ex. B.[2] At that time, an appeal of the federal case was still pending. On September 10, 2011, the Eleventh Circuit reversed the judgment of the District Court, finding that summary judgment should have been granted to the defendant. Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1150 (11th Cir. 2011). As a result of the Eleventh Circuit's decision, Debtor's $150 million judgment was vacated. Id. Apparently, at present, Debtor and Plaintiffs are no longer pressing the argument that the $2 million settlement was invalid and are, instead, seeking to have nearly all of it classified as attorneys' fees and costs to be used to fully satisfy Plaintiffs' expenses prior to providing any funds to Debtors' other creditors.

This Court is unaware of any other recovery produced by Plaintiffs' representation apart from the $2 million settlement

---

[2] Pursuant to Federal Rule of Evidence 201, this Court will take judicial notice of the docket filings within this Court. See Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 54 (2d Cir. 1993) (taking judicial notice of a docket entry in another court).

3

fund in the ATS litigation. Plaintiffs did successfully defend Debtor in a declaratory judgment action brought by Evanston Insurance Company.

Within thirty days of the ATS litigation verdict, Plaintiffs filed attorneys' liens in this Court covering the verdict and "professional services and expenses incurred in the representation of Douglas Asphalt Company, Joel Spivey, and Kyle Spivey in related litigation." Dkt. No. 2, Ex. 1. For the ATS litigation, Plaintiffs contend they incurred fees of $750,000.00 and expenses of $216,945.97. Plaintiffs also incurred other fees and expenses in representing Debtor in other matters arising from the Debtor's contract with the Georgia Department of Transportation.

ATS and Evanston requested that the $2 million owed to Debtor through the settlement agreement from the ATS litigation be paid into the registry of this Court. That request was granted and a $2 million fund was registered "Settlement Fund."

Plaintiffs then demanded that the Surety Defendants pay $1,710,636.38, an amount that would encompass more than just the work Plaintiffs did for the ATS litigation. The Surety Defendants did not pay this sum. Specifically, this proceeding was brought to determine the extent, validity, and priority of Plaintiffs' lien with respect to the funds still on deposit within the registry of this Court. Through this proceeding,

4

Plaintiffs assert a charging lien against the ATS Settlement Fund under O.C.G.A. § 15-19-14(b). Subsequent to the initiation of this proceeding, the Surety Defendants agreed to release $1 million from the ATS Settlement Fund to the Plaintiffs.

Before the Bankruptcy Judge and before this Court, the Surety Defendants have not disputed Plaintiffs' entitlement to payment for their expenses and fees resulting from the ATS litigation. The sole dispute concerns whether the Plaintiffs' attorneys lien under O.C.G.A. § 15-19-14(b) encompasses just the fees and expenses for the ATS litigation or whether it also encompasses Plaintiffs' fees and expenses in the other suits. In his Order, the Bankruptcy Judge held that the latter approach was correct and that Plaintiffs' lien only encompassed the fees and expenses incurred in the ATS litigation, where the Settlement Fund was generated.

Plaintiffs appealed to this Court. Although in the designation of the record, Plaintiffs raised five issues to be presented, see Dkt. No. 2, the sole issue presented for review in their brief is whether the Bankruptcy Court erred in finding "that [Plaintiffs'] attorneys' lien was limited in scope to only those fees directly related to [Plaintiffs'] involvement in the successful resolution of [the ATS litigation]." Dkt. No. 4, at 1.

## LEGAL STANDARD

"In reviewing bankruptcy court judgments, a district court functions as an appellate court." In Re JLJ, Inc., 988 F.2d 1112, 1113 (11th Cir. 1993). This Court "reviews the bankruptcy court's legal conclusions *de novo*, but must accept the bankruptcy court's factual findings unless they are clearly erroneous." Id. In the present case, the Bankruptcy Judge's Order concerned pure issues of law and did not address any factual disputes, thus the only applicable standard of review is *de novo*.

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative

6

evidence to show that a genuine issue of fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

## DISCUSSION

As discussed above, the only issue before this Court is whether Plaintiffs' lien is limited solely to the amount of fees and expenses in the litigation which generated the Settlement Fund or whether Plaintiffs' lien also encompasses fees and expenses incurred in other suits. After due consideration, this Court agrees with the Bankruptcy Judge and concludes that Plaintiffs' attorneys' lien encompasses only the fees and expenses from the ATS litigation.

Georgia's attorneys' lien statute is set forth in O.C.G.A. § 15-19-14. That code section states, in relevant part, that:

> (a) Attorneys at law shall have a lien on all papers and money of their client in their possession for services rendered to them. They may retain the papers until the claims are satisfied and may apply the money to the satisfaction of the claims.
>
> (b) Upon actions, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens except tax liens; and no person shall be at liberty to satisfy such an action, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied. Attorneys at law shall have the same right and power over the actions, judgments, and decrees to enforce their liens as their clients had or may have for the amount due thereon to them.
>
> (c) Upon all actions for the recovery of real or personal property and upon all judgments or decrees for the recovery of the same, attorneys at law shall have a lien for their fees on the property recovered superior to all liens except liens for taxes, which

7

> may be enforced by mortgage and foreclosure by the attorneys at law or their lawful representatives as liens on personal property and real estate are enforced. The property recovered shall remain subject to the liens unless transferred to bona fide purchasers without notice.

O.C.G.A. § 15-19-14.

Prior to the enactment of § 15-19-14, attorneys' liens were creatures of common law. See McDonald, Bailey & Powers v. Napier, 14 Ga. 89 (Ga. 1853). "Lien laws such as the attorney's lien statute are in derogation of common law and must be strictly construed." Gutter-Parker v. Pridgen, 601 S.E.2d 707, 708 (Ga. Ct. App. 2004). "One who claims a lien must bring herself clearly within the law and the statute will not be construed so as to apply to any factual situation not strictly within its wording." Id.

As illustrated in the organization of the statute, there are three distinct types of liens. As the Bankruptcy Court properly noted, Plaintiffs' lien falls within subsection (b). Plaintiffs' lien does not qualify as a subsection (a) lien, known as a retaining lien, because Plaintiffs are not claiming a right to papers or money of the client within their possession. See O.C.G.A. § 15-19-14(a); King v. Tyler, 250 S.E.2d 784, 786 (Ga. Ct. App. 1978). Plaintiffs' lien cannot be characterized as a subsection (c) lien because the present case does not involve any real or personal property. Plaintiffs' lien is

8

clearly a lien under subsection (b). These types of liens are known as charging liens and constitute "[a]n attorney's lien on a claim for money." McRae, Stegall, Peek & Co., Harman, Smith & Manning, LLP v. Ga. Farm Bureau Mut. Ins. Co., 729 S.E.2d 649, 652 (Ga. Ct. App. 2012).

Classifying Plaintiffs' lien is not merely an academic exercise. As noted in the Bankruptcy Judge's Order, a lien's characteristics—including scope, perfection, and creation—differ among each category. For example, in Carragher v. Potts, the Georgia Court of Appeals found that cases based on O.C.G.A. § 15-19-14(b) were inapplicable and distinguishable in determining a case under O.C.G.A. § 15-19-14(c). Specifically, cases based on subsection (c) had held that subsection (c) liens "[were] extinguished by the settlement and dismissal of the underlying lawsuit." Id. However, the court in Carragher determined that liens under subsection (b), in direct contrast, were "not extinguished by the settlement and dismissal of the underlying lawsuit." Id.

Thus, as the Bankruptcy Court properly noted, Plaintiffs' reliance on language from inapplicable subsections and cases construing other subsections is misplaced. In determining the scope of Plaintiffs' lien, this Court must look to subsection (b) and the cases concerning charging liens, the type of lien contained in subsection (b).

9

As discussed above, "[o]ne who claims a lien must bring herself clearly within the law and the statute will not be construed so as to apply to any factual situation not strictly within its wording." Gutter-Parker, 601 S.E.2d at 708. Plaintiffs' fees and expenses in the other matters are not "clearly within the statute" and do not involve a "factual situation . . . strictly within its wording." Subsection (b) states:

> (b) Upon actions, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens except tax liens; and no person shall be at liberty to satisfy such an action, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied. Attorneys at law shall have the same right and power over the actions, judgments, and decrees to enforce their liens as their clients had or may have for the amount due thereon to them.

O.C.G.A. § 15-19-14(b). Nothing in that language indicates that a charging lien extends beyond the suit in which the judgment was produced.

The distinction among different types of attorneys liens dates back to before Georgia's attorneys' lien statute was enacted. In 1853, the Georgia Supreme Court distinguished between the scope of the different types of attorneys' liens and held that, while liens on papers and writings within the attorney's possession extend to all services, liens on a judgment are limited solely to work on the case from which the judgment was obtained. See McDonald, Bailey & Powers v. Napier,

10

14 Ga. 89 (1853). The court stated that, based on English common law, an attorney has a lien "for the amount of his bill of costs and disbursements upon the deeds, papers and writing of his client, which come into his hands, although his demand does not arise from services in relation to those papers." Id. at 89. Thus, an attorney who has a retaining lien can satisfy what is owed to him from materials within his possession even if his possession of those materials is unrelated to the amount owed. In contrast, the court stated "[t]hat the lien of the attorney upon a judgment *is restricted to the costs of the particular suit.*" Id. at 108 (emphasis added).

McDonald makes it clear that, prior to the enactment of O.C.G.A. § 15-19-14, charging liens such as Plaintiffs' applied only to the particular suit from which the judgment arose, even though other types of attorneys' liens had a broader scope. Plaintiffs argue that the Bankruptcy Court's reliance on McDonald is misplaced. See Dkt. No. 4 at 12. Plaintiffs argue that, since the lien statute is in derogation of common law, it supersedes McDonald. Plaintiffs state that "[e]ither the lien statute is simply an adoption of the common law, and therefore not subject to the strict construction as the Bankruptcy Court holds, or is in derogation of common law and therefore supersedes McDonald." Dkt. No. 4 at 13.

However, the enactment of the statute did not render Georgia's prior case law on the subject irrelevant. If the statute had explicitly addressed the present situation, then Plaintiffs would be correct, and the common law rule could not controvert the statutory language. As discussed above, the statute does not provide guidance on the issue.

> [I]t has always been a rule of construction of statutes that those in derogation of the common law, that is those which give rights not had under the common law, . . . must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute. The legislature is presumed to act with knowledge of this rule of construction, and with that body only lies the right and privilege to grant rights not given under the common law and to extend and broaden any rights so granted. Such is not the function of the courts.

Delta Airlines, Inc. v. Townsend, 614 S.E.2d 745, 747-48 (Ga. 2005) (citing Thompson v. Watson, 197 S.E. 774 (Ga. 1983), overruled on other grounds, Walden v. Coleman, 124 S.E.2d 265 (Ga. 1962)). In accordance with these principles, this Court will not read into O.C.G.A. § 15-19-14(b) an intention to overrule the principles articulated in McDonald. Certainly, the Court will not view the statute as silently expanding charging lien rights. Additionally, in construing O.C.G.A. § 15-19-14, Georgia courts have continued to cite and consider cases prior to the enactment of the statute, such as McDonald. See May v. May, 349 S.E.2d 766, 767 (Ga. Ct. App. 1986); King, 250 S.E.2d

12

at 786; Davidson v. Collier, 122 S.E.2d 465, 467 (Ga. Ct. App. 1961).

The majority of other jurisdictions limit an attorneys' charging lien to the action that produced the funds. See Wanda Ellen Wakefield, Attorney's Charging Lien As Including Services Rendered or Disbursements Made in Other Than Instant Action or Proceeding, 23 A.L.R.4th 336 (1983) ("As a general rule, apart from statute, it has been held that an attorney's charging lien extends only to fees and disbursements rendered in the particular action in which they were incurred . . . ."). A minority of jurisdictions allow recovery for services rendered in closely related actions. See id. However, those jurisdictions either adopted a common law rule different than Georgia's common law rule or have different statutory language. See Kleager v. Schaneman, 322 N.W.2d 659, 341 (Neb. 1982) (allowing attorney to recover fees from another suit when other suit was part of a "'package settlement' of both cases"); Fillmore v. Wells, 15 P. 343, 344 (Colo. 1887) (decision based on Colorado statute); Renick v. Ludington, 16 W. Va. 378, 392 (1880) (adopting common law different than that adopted in McDonald).

Plaintiffs also rely on the policy reasoning behind attorneys' liens—encouraging attorneys to represent clients who may be unable to pay for their services. See Dkt. No. 4, at 13.

13

Determining the priority and scope of various creditors in bankruptcy proceedings involves a balancing of various policies and competing interests. In enacting O.C.G.A. § 15-19-14, the Georgia legislature struck what it felt to be an appropriate balance; it is not for this Court to disrupt that judgment. For the reasons stated above, the Bankruptcy Court correctly concluded that Plaintiffs' lien was limited only to the expenses and fees incurred in the ATS litigation and does not extend to Plaintiffs' expenses and fees generated in other lawsuits.

## CONCLUSION

The Order of the Bankruptcy Court, Dkt. No. 1, Ex. 2, is **AFFIRMED**. The Bankruptcy Court properly granted Defendants' partial Motion for Summary Judgment and denied Plaintiffs' Motion for Summary Judgment.

**SO ORDERED**, this 22nd day of March, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA